UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

| | |
|---|---|
| **Scott Komitor**, individually, and on behalf of others similarly situated,<br><br>     Plaintiff,<br>vs.<br><br>**MAG Motors III, Inc.**, a for profit Florida corporation, and; **Michael A. Grieco**, individually.<br><br>     Defendants.<br>_____/ | CLASS REPRESENTATION |

## FAIR LABOR STANDARDS ACT COMPLAINT

Plaintiff Scott Komitor, individually and on behalf of others similarly situated, sues Defendants, MAG Motors III, Inc., and; Michael A. Grieco, individually, and allege:

### JURISDICTIONAL ALLEGATIONS

1. This is an action to recover money damages and other relief brought under the laws of the United States of America and under common law theories for the recovery of unpaid wages. This Court has jurisdiction pursuant to *inter alia*, the Fair Labor Standards Act, 29 U.S.C., Sections 201-219, inclusive ("FLSA").

2. Plaintiff Scott Komitor worked as automobile salesperson who worked for a conglomerate of related persons and entities who together own and operate at least eight automobile dealerships in Florida and another eight in Rhode Island and Massachusetts. The conglomerate includes Defendants MAG Motors III, Inc. and Michael A. Grieco, together with such other entities and individuals as Michael A. Grieco, Grieco Automotive Group, Grieco Automotive Management, LLC, Florida Mag Enterprises, Inc., Grieco Motors LLC, and others

who together operate the dealerships as a single conglomerate automobile dealership. Mr. Scott Komitor, together with any other person who may hereafter consent to join in this lawsuit, is an "employee" within the meaning of 29 U.S.C. §203(e).

3. Defendant MAG Motors III, Inc. is a Florida corporation owned and/or operated and controlled by and through, directly and indirectly, Defendant Michael A. Grieco, together with such other related entities and individuals who make up this conglomerated employer. Defendant Grieco and Defendant MAG Motors III, Inc., together with the other members of the conglomerate are together and individually Employers of the Plaintiff in that they each, directly and indirectly through designees, exercised operational control over the dealership operations.

4. Defendants, each of them individually and together as a group, are a "person" and an "employer" within the meaning of the 29 U.S.C. §203 (a) and (d) and may be hereinafter referred to as the "Employer". Moreover, this same "Employer", each individually or together, is an enterprise engaged in commerce within the meaning of 29 U.S.C. §203(s).

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §1337, and by 29 U.S.C. §216(b). The Employer is, and at all times material to this action was, an organization which sells and/or markets and/or transports services and/or goods to customers in Florida and throughout the United States. Upon information and belief, the annual gross revenue of the Employer was at all times material to this action in excess of $500,000.00 per annum.

6. By reason of the foregoing, the Employer is, and at all times material to this action was, an enterprise engaged in commerce or in the production of goods for commerce as defined in Sections 3(r) and 3(s) of the FLSA, 29 U.S.C., §§ 203(r) and 203(s). Moreover, the Plaintiff was, and others similarly situated were, individually engaged in commerce by virtue of the nature of the work performed.

## CLASS ALLEGATIONS

7. The named Plaintiff is similarly situated to an untold number of other salespersons who work or have worked during any part of the past three years at any of the Florida automobile dealerships owned and operated by this Employer during any part of the three year period beginning May 2, 2016 through March 9, 2017, including that dealership known as "Grieco Kia", at which Plaintiff worked. "Grieco Kia" is a fictitious name owned by the Employer.

8. The named Plaintiff and those similarly situated work or worked under a "commissions-only" pay plan in place the Employers' dealerships. On a weekly basis sales persons are paid either the commissions generated during an established weekly pay period based upon the number of automobiles sold by each respective salesperson, or if greater, they are provided a variable draw of a flat $300.00. Any amounts drawn must be repaid to their Employer in perpetuity until repaid in full.

9. When employees took draws in excess of commissions earned during weekly pay periods, they were considered to be "in the hole". Any amount taken as a "draw" during a given pay-period is not kept by the sales person, but rather represents a financial obligation owing to the Employer, which is required to be systematically "paid back" or returned by the employee through deductions from future commissions earned as though the Employer were some sort of super-lien judgment creditor. The "draws" were treated as money owed to the employer in perpetuity, until completely repaid from earned commissions or otherwise.

10. The named plaintiffs and those similarly situated were routinely worked approximately seventy (70) to eighty (80) hours per week or more. However, because the sales persons are only permitted to keep the actual commissions they generate, they actually work well in excess of the number of hours they are scheduled to work in order to make sufficient sales.

Accordingly, throughout many pay periods, the Plaintiff and those similarly situated were paid less than a required minimum wage required for every hour worked during certain pay periods.

11. The employer maintains a method of time-keeping which would or could reflect the actual number of hours worked by sales personnel, however, any draw advanced, whether a flat rate or whether based upon hours supposedly worked, represents not wages which the employees are allowed to keep unconditionally, but rather a rolling debt owing to the Employer. Accordingly, the employees are discouraged from logging hours they work to avoid owing the Employer for the number of hours they work.

12. The Employer does not specifically or finally pay anything to any of its sales employees on account of hours worked and in fact does not attempt to keep track of or otherwise account for the number of hours worked actually worked by them.

13. The Employer further avoids the responsibility of paying a minimum wage to sales personnel by refusing to pay earned commissions or any wages at all for the last days of an employee's tenure of employment.

14. On numerous pay periods, during the period of time covered by this Complaint, the Plaintiff and those similarly situated, generated fewer sales commissions than are necessary to cover the required minimum wage for all hours worked during respective pay periods, or they sometimes were not paid all of their earned commissions and bonuses under the pretext that they were unqualified for such compensation.

**RETALIATION ALLEGATIONS**

15. On or about March 7, 2017, while still employed by the Employer, Plaintiff Komitor complained to his supervisor that Plaintiff had not been paid at all for a period of more than three weeks, including the period of several days during which he worked since the last pay date. Two days later, on March 9, 2017 the Employer involuntarily terminated Plaintiff Komitor

4

from employment.

16. The Plaintiff Scott Komitor suffered adverse employment consequences as a result of his exercise of rights protected under the FLSA in that he claimed his right to the timely payment of wages and complained regarding the failure of the Employer to comply with the obligation to make timely wage payments. Among other adverse employment consequences, Plaintiff was terminated from employment with the Employer in retaliation for his exercise of rights protected under the FLSA.

## ATTORNEY'S FEES

17. Plaintiff has engaged the services of the undersigned attorneys and agreed to pay a reasonable attorney's fees for their services.

## ENTITLEMENT TO ATTORNEY'S FEES

18. Plaintiff, and those similarly situated, are entitled to an award of prevailing party attorney's fees pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, Florida Statute §448.08, and other related authority.

## -- COUNT I --
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
**(Failure to Pay Minimum Wages)**

Plaintiff realleges paragraphs 1 through 14 and 17-18 as fully set forth herein.

19. At all times during his employment, the Plaintiff was an employee required to be paid a minimum hourly wage for every hour worked for the Employer and entitled to receive those minimum hourly wages not later than the regularly established pay day.

20. On numerous occasions during his tenure with this Employer, all occurring during the period beginning May 3, 2015, ("the applicable period covered by this Complaint"), the Employer violated the provisions of the FLSA, 29 U.S.C. §206 and §215(a)(2) by failing to timely pay the Plaintiff and/or other similarly situated employees at least a minimum hourly wage on the

5

regularly scheduled pay date when wages were due, and often paying them less than the highest applicable minimum hourly wage during applicable pay periods.

21. The Employer knew or showed a reckless disregard for the provisions of the FLSA concerning the timely payment of hourly wages and the payment of minimum wages for all hours worked in respective pay periods, and accordingly remains owing the named Plaintiff and other similarly situated employees, liquidated damages, based upon the tardy payment of wages, and unpaid minimum wages for the failure to pay even the required minimum hourly wage for every hour worked during each respective pay period during the three year period preceding this lawsuit.

22. The Plaintiff and those similarly situated incurred expenses and endured considerable hardships and damages as a result of their being deprived of the timely payment of their wages and the failure to pay even a minimum hourly wage when due.

WHEREFORE, Plaintiff, and others similarly situated demand the following: payment of minimum wages for every hour worked by him and those similarly situated during every pay period, or as much as is allowed by the FLSA, whichever is greater, in an amount to be proven at the time of trial; an additional like amount as liquidated damages for any unpaid or late-paid minimum wages; an award of reasonable attorney's fees and costs, and; any and all such other relief which this Court may deem reasonable under the circumstances. Also, in the event that Plaintiffs do not recover liquidated damages as allowed, then Plaintiffs and those similarly situated demand an award of prejudgment interest as a lesser alternative to liquidated damages.

## -- COUNT II --
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Retaliation by Employer)

Plaintiff Scott Komitor realleges ¶¶ 1 through 18 as though fully set forth herein.

23. Plaintiff, Komitor, specifically exercised rights to recover timely payment of minimum wages and other relief by asserting rights protected under the FLSA.

24. Almost immediately after exercising his rights under the FLSA, and as a result of such exercise, the Plaintiff, and potentially others who may be similarly situated, suffered adverse employment consequences.

25. At all times material to this action, the Employer violated 29 U.S.C. §215(a)(3) in that Defendant retaliated against Plaintiff for asserting rights under the FLSA.

26. The Employer knew and/or showed a reckless disregard of the provisions of the FLSA concerning the prohibition against retaliation against the assertion of FLSA rights and thus is liable to compensate the Plaintiffs for damages, liquidated damages, punitive damages and other equitable relief.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, demand the following: employment, reinstatement, promotion, lost wages, front pay, compensatory damages, pre-judgment interest, and punitive damages pursuant to the Fair Labor Standards Act to be proven at the time of trial and for such further relief as may be permitted by the Fair Labor Standards Act, whichever is greater, together with court costs and attorney's fees.

## -- COUNT III --
## BREACH OF AGREEMENT TO PAY WAGES
### (Failure to Pay Wages)

Plaintiff Scott Komitor realleges ¶¶ 1 through 14 and 17-18 as though fully set forth herein.

27. At all times during his employment, the Plaintiff was an employee whom the Employer had agreed to pay at least a flat rate variable commission for each car he sold and additional amounts on account of SPIFF bonuses, periodic bonuses, and other commissions earned.

28. Additionally, the Employer had agreed to pay Plaintiff a specified amount for various "review bonuses" related to positive customer reviews.

29. Additionally, the Employer had agreed to pay Plaintiff on account of accrued PTO (paid time off) time, based upon an average of his earnings.

30. At the time Plaintiff Scott Komitor was involuntarily terminated from employment on or about March 9, 2017, he was owed not less than $3,500.00 consisting of unpaid/earned commissions, not less than $1,250.00 in review bonuses, and $1,500.00 on account of accrued PTO time, for a total of $6,250.00 in unpaid wages.

31. The Employer breached the agreement to pay wages and is unjustly enriched by the services rendered by the Plaintiff Scott Komitor.

WHEREFORE, Plaintiff, demands the following: payment of all accrued unpaid wages and commissions in an amount to be proven at the time of trial; accrued interest on those sums at the applicable judgment rate of interest, and; an award of reasonable attorney's fees and costs.

## **JURY DEMAND**

32. Plaintiff, Scott Komitor, and those similarly situated, demand trial by jury of all issues, claims and defenses in this action that are triable as of right by a jury.

Respectfully submitted this 19th day of June, 2017.

Anthony F. Sanchez, P.A.
Counsel for Plaintiff
6701 Sunset Drive, Suite 101
Miami, FL 33143
Tel.: 305-665-9211
Fax: 305-328-4842
E-mail: afs@laborlawfla.com

By: /s/Anthony F. Sanchez
    Anthony F. Sanchez
    Florida Bar No.0789925